UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X
Adam Daderian and Maria Daderian, individually, and as
parents and natural guardians of infant A.D.,

                    Plaintiffs,

                    **COMPLAINT**

        -against-                    **JURY TRIAL DEMANDED**

PORT JEFFERSON SCHOOL DISTRICT,

                  Defendant.
-------------------------------------------------------------------------X

Plaintiffs Adam Daderian ("Adam") and Maria Daderian ("Maria"), individually and as parents and natural guardians of infant A.D. (collectively "Plaintiffs"), by their attorneys, Stagg Wabnik Law Group LLP, complaining of Defendant Port Jefferson School District ("Defendant"), allege as follows:

## NATURE OF THE ACTION

1.     A.D., a fourteen-year-old girl with Autism Spectrum Disorder, was in middle school in the 2021/2022 school year. A.D. told her parents that an administrator from the adjourning high school repeatedly entered her special education classroom for no legitimate reason and engaged in sexually inappropriate contact with her. When Maria called Defendant to complain, Defendant not only failed to conduct an investigation, but also retaliated by demanding additional and unnecessary meetings and measures, and ultimately pulling A.D.'s placement leaving her nowhere to attend school.

2.     Plaintiffs bring this action against Defendant for their discrimination, retaliation, negligence, negligent supervision, negligent retention of employees, and intentional infliction of emotional distress. Defendant's conduct was willful and wanton and showed a reckless disregard

for the safety of A.D.. This has caused Plaintiffs to suffer substantial economic and noneconomic damages and severe mental anguish and emotional distress.

## PARTIES

3. At all relevant times, Plaintiffs were and are residents of Suffolk County, New York.

4. A.D. was a female student enrolled as a seventh-grade student at Port Jefferson Middle School (the "Middle School") during the 2021/2022 school year.

5. At all relevant times, Defendant was and is a municipality which oversaw the Middle School, and is located at 550 Scraggy Hill Road, Port Jefferson, New York 11777.

6. At all times relevant, Defendant was a recipient of federal funding within the meaning of 20 USC § 1681(a).

## Jurisdiction And Venue

7. This Court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1331 because the matters in controversy arise under the laws of the United States. Specifically, Plaintiffs assert claims under Title IX of the Education Amendments of 1972, 20 U.S.C § 1681, et seq.

8. This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 USC § 1367.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because all parties reside within this Court's judicial district and a substantial part of the events or omissions giving rise to the claims occurred within this district.

## STATEMENT OF FACTS

10.     At the time of the 2021/2022 school year, A.D. was classified as a child with a learning disability and had an Individualized Education Plan ("IEP") since she was in kindergarten.

11.     A.D. is zoned to attend school in the Mount Sinai Union Free School District ("Mount Sinai").

12.     A.D.'s IEP provides that she is to attend middle school in a 12:1:1 program, which is 12 students in the class with A.D. having a one-to-one teaching assistant.

13.     A.D. was set to attend middle school at Mount Sinai for the 2021/2022 school year.  Plaintiffs were informed by Mount Sinai personnel that it could not provide A.D. with her required teaching assistant and that it contracted with Port Jefferson for A.D. to attend the Middle School.

14.     The Earl L. Vandermeulen High School (the "High School") and the Middle School buildings are connected through a hallway and personnel can easily move between the two schools.

15.     On or about June 15, 2022, A.D. told Maria that a high school administrator had approached A.D., bent down, put his head on her chest while he hugged her and stated, "mi amore."

16.     Maria was immediately alarmed, particularly since A.D. did not speak any foreign languages and had never before used the expression "mi amore."

17.     A.D. told her mother that this conduct had started approximately May or June of 2022.

18.     Upon further inquiry, A.D. disclosed that with no legitimate purpose to do so, this high school administrator had repeatedly taken it upon himself to walk from the High School to the Middle School into A.D.'s classroom.

19.     A.D. also stated that this high school administrator entered the girls' bathroom in the Middle School for no legitimate reason.

20.     Maria discovered an entry in A.D.'s journal from on or about May 19, 2022, where she wrote that the high school administrator "makes me uncomfortable." A.D. also wrote that his actions made her very mad and angry, that she does not "wanna see his face."

21.     The day after A.D.'s disclosures about the high school administrator, on or about June 16, 2022, Maria called the high school administrator's office and left a voicemail to schedule a meeting. Maria did not provide any details about what she wanted to discuss.

22.     Approximately an hour later, Maria called again and spoke with a secretary who said they had received her message and were looking at the calendar.

23.     Approximately two hours after that, Mount Sinai's Director of Special Education Doris Stanojev ("Stanojev") called Maria and said Defendant would no longer comply with its contract with Mount Sinai unless A.D. underwent a psychiatric evaluation. Defendant provided no explanation for the sudden request for a psychiatric evaluation.

24.     The next day, on or about June 17, 2022, Maria learned that Defendant was aware of the "hug" had conducted some sort of "investigation" into the high school administrator's conduct. This did not make any sense because Plaintiffs had not yet informed Defendant about their daughter's allegations against the high school administrator, nor were they contacted to provide any information.

25.     On or about June 17, 2022, Maria requested Defendant perform a complete and thorough investigation into the high school administrator's conduct. At that time, Defendant

suddenly required a new Committee on Special Education ("CSE") meeting although one had been held just two months earlier on or about April 6, 2022.

26.     Defendant also claimed that it now required A.D. to receive a Functional Behavioral Assessment ("FBA"). A.D. does not and did not have behavioral or disciplinary issues, so there was no legitimate basis for the FBA. Additionally, an FBA was not discussed during the April 6th CSE meeting.

27.     When Plaintiffs refused to back off their quest for an investigation into the high school administrator's conduct, Defendant retaliated further and pulled A.D.'s placement for the 2022/2023 school year. A.D. was left without a place to attend school despite Defendant's previous agreement to continue its contract with Mount Sinai.

28.     On or about July 12, 2022, Adam and Maria and a student advocate attended another CSE meeting with Stanojev, Mount Sinai Middle School Psychologist Diana Thorley, Special Education teacher Sara Feretic, Mount Sinai General Education teacher Sarah Zamorski, and Defendant's Director of Special Education Dr. Jodi Cahill ("Dr. Cahill"). During this meeting, Stanojev stated that she received a call from Dr. Cahill on or about June 16, 2022 regarding voicemails and emails Adam and Maria left for the high school administrator and Eric Haruthunian, the previous High School Principal.

29.     According to Stanojev, Defendant investigated and relayed its findings to Stanojev on or about June 17, 2022. Dr. Cahill and Stanojev did not tell Plaintiffs the results of the purported investigation.

30.     During the July 12th meeting, A.D.'s student advocate Deborah Lyons-Birsner repeatedly questioned why Defendant did not conduct an actual investigation or contact the police and/or Child Protective Services. The CSE team repeatedly refused to discuss or acknowledge Plaintiffs' allegations.

31.     During the Summer of 2022, A.D. stated that the high school administrator had made fun of her during the school year, calling her a "laughing stock" and a "pussy."

32.     Upon information and belief, the high school administrator suddenly resigned from the High School in or around the late Summer/early Fall of 2022.

33.     To date, Defendant has refused to conduct a proper investigation into the high school administrator's conduct toward A.D..

34.     Defendant's refusal to provide any information regarding their alleged investigation into the high school administrator's conduct or his sudden resignation has caused and will continue to cause Plaintiffs additional stress and anxiety.

35.     Defendant terminated its contract with Mount Sinai solely because Plaintiffs reported A.D.'s complaints about the high school administrator's conduct.

36.     To date, Defendant has refused to provide A.D. with a free and appropriate public education in the least restrictive environment.  A.D. receives only two hours of home instruction per day.

37.     Maria was forced to quit her job to stay home with A.D.

38.     On or about September 14, 2022, a Notice of Claim was duly presented to Defendant on behalf of Plaintiffs.

39.     On or about January 6, 2023, Adam and Maria were examined under oath pursuant to New York General Municipal Law § 50-h.

40.     On or about February 6, 2023, A.D. was examined under oath pursuant to New York General Municipal Law § 50-h.

41.     More than 30 days have passed since the Notice of Claim was served, and Plaintiffs' claim has not been adjusted or settled.

**AS AND FOR A FIRST CAUSE OF ACTION**
**(Sex Discrimination in Violation of Title IX)**

42.     Plaintiffs repeat and reallege each and every allegation made in the above paragraphs of this complaint as if set forth herein more fully at length.

43.     Pursuant to Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681-1688 ("Title IX"), "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."

44.     A.D. told Adam and Maria that commencing in or around May or June of 2022, the high school administrator engaged in sexually inappropriate behavior with A.D..

45.     The high school administrator's described conduct was severe, pervasive, objectively offensive, and created a hostile educational environment for A.D. based on her sex.

46.     Plaintiffs reported the high school administrator's conduct to multiple administrators of Defendant who had the authority and ability to investigate and take corrective action.

47.     As Defendant received federal financial assistance, it was obligated to address A.D.'s sexual assault report which is a form of sex discrimination under Title IX.

48.     By its acts and omissions, Defendant was deliberately indifferent to A.D.'s sexual assault claim and created a hostile educational environment for her. Defendant's deliberate indifference included, but was not limited to: Failing to conduct a fair investigation into her claims of sexual assault; never issuing findings on her claims of sexual assault; dismissing Plaintiffs' requests for additional information regarding the results of their report of A.D.'s sexual assault; failing to create, implement, distribute, and enforce sexual harassment policies and procedures in compliance with Title IX; and rescinding A.D.'s placement so that she has been out of the school environment since September 6, 2022.

49. Defendant's discriminatory actions were deliberate and intentional.

50. As a direct and proximate result of Defendant's violation of A.D.'s rights under Title IX, A.D. suffered and continue to suffer losses of educational opportunities and benefits, along with injuries, damages and losses, including, but not limited to: expenses for past and future medical and psychological care and attorneys' fees and costs.

51. Defendant should be compelled to reinstate A.D. to an appropriate educational setting.

## AS AND FOR A SECOND CLAIM
### (Retaliation in Violation of Title IX)

52. Plaintiffs repeat and reallege each and every allegation made in the above paragraphs of this complaint as if set forth herein more fully at length.

53. Plaintiffs engaged in activity protected under Title IX when they reported that A.D. said she was sexually assaulted by the high school administrator.

54. Plaintiffs engaged in activity protected under Title IX when they requested that Defendant conduct an investigation into the claims of sexual assault.

55. By its acts and omissions, Defendant retaliated against A.D. for protected activity under Title IX. Defendant's retaliation included, but was not limited to: prohibiting A.D. from presenting evidence in support of the claim that the high school administrator had sexually assaulted A.D.; demanding A.D. have a CSE meeting when one had been conducted two months earlier; demanding A.D. have a FBA even though one was not required at the CSE meeting conducted two months earlier; and pulling A.D.'s placement so that she no longer has access to an educational setting.

56. Defendant's retaliatory acts occurred within immediately after the protected activity.

57. Defendant's retaliatory actions in violation of Title IX were willful, deliberate and intentional.

58. As a direct and proximate result of Defendant's violation of A.D.'s rights under Title IX, A.D. suffered and continue to suffer losses of educational opportunities and benefits, along with injuries, damages and losses, including, but not limited to: expenses for past and future medical and psychological care, and attorneys' fees and costs.

59. Defendant should be compelled to reinstate A.D. to an appropriate educational setting.

## AS AND FOR A THIRD CLAIM
### (42 U.S.C. § 1983)

60. Plaintiffs repeat and reallege each and every allegation made in the above paragraphs of this complaint as if set forth herein more fully at length.

61. A.D.'s Equal Protection rights were violated when she suffered sexual harassment and assault at the Middle School.

62. Title IX provides in pertinent part: [N]o person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance.

63. Title IX provides students like A.D. clear civil rights to be free from known sex discrimination at school.

64. Title IX imposes a binding mandatory obligation on federal funding recipients like Defendant, prohibiting it from discriminating against students on the basis of sex.

65. Defendant had a duty to train, and failed to properly or sufficiently train its administrators and staff about: sex discrimination and sexual harassment against students; and Title IX.

66.     Defendant failed to train its administrators and staff on, among other things, sexual misconduct against students and identifying, investigating, reporting, stopping, and remediating the effects of sexual harassment.

67.     Defendant failed to train its administrators and staff on, among other things, the prohibition, illegality, and impropriety of retaliating against students like A.D. who report violations of Title IX, which is vital to enforcement of Title IX.

68.     Defendant's failure to train its administrators and staff effectively denied A.D.'s established federal rights and Constitutional rights.

69.     Defendant's failure to train administrators and staff was deliberate, reckless, and in callous indifference to A.D.'s federally protected rights.

70.     As a direct and proximate result of Defendant's actions, inactions, and deliberate indifference to and violation of A.D.'s clearly established Constitutional and federal rights, A.D. suffered, and continues to suffer, injuries including, without limitation, emotional distress, loss of enjoyment of life, fear, anxiety and trauma; expenses for past and future medical and psychological care; and attorneys' fees and costs.

## AS AND FOR A FOURTH CLAIM
### (Negligence)

71.     Plaintiffs repeat and reallege each and every allegation made in the above paragraphs of this complaint as if set forth herein more fully at length.

72.     Defendant owed and continues to owe Plaintiffs a duty to take due care to protect the safety of students enrolled in the Middle School.

73.     Defendant was also under a duty to supervise the individuals employed in the Middle School.

74.     Defendant's duty extended to include a duty to supervise and train employees employed by Defendant and ensure these employees complied with Defendant's policies and procedures and the law.

75.     The conduct of the high school administrator described by A.D. constituted sexually inappropriate behavior with A.D..

76.     The high school administrator's described conduct was not focused on helping students with disabilities like A.D., but to take advantage of A.D.'s disabilities to engage in unwelcomed and unlawful behaviors.

77.     Although A.D.'s IEP required a 1:1 aide to be with her at all times, Defendant allowed A.D. to be left alone at the Middle School.

78.     Defendant failed to take due care to supervise the high school administrator; failed to protect A.D. from the high school administrator; failed to promulgate and enforce policies and procedures to ensure the high school administrator did not violate the law; failed to exercise reasonable care to investigate the behavior of the high school administrator; failed to create or develop a plan to address the behavior of the high school administrator; and otherwise was careless, reckless and/or negligent.

79.     The negligence of Defendant, its agents, employees and/or servants damaged A.D., causing her lost educational opportunities and benefits, severe emotional distress, and other consequential damages to be determined at trial.

80.     The negligence of Defendant, its agents, employees and/or servants also damaged Adam and Maria, causing them severe emotional distress, loss of earnings, and other consequential damages to be determined at trial.

81.     By reason of the foregoing, Defendant is liable to Plaintiffs for compensatory damages in an amount to be determined at trial, plus punitive damages.

**AS AND FOR A FIFTH CLAIM**
**(Negligent Infliction of Emotional Distress)**

82. Plaintiffs repeat and reallege each and every allegation made in the above paragraphs of this complaint as if set forth herein more fully at length.

83. The conduct of the high school administrator described by A.D. constituted sexually inappropriate behavior with A.D..

84. A.D. further stated that the high school administrator entered the girls' bathroom.

85. The high school administrator's described conduct was not focused on helping students with disabilities like A.D., but to take advantage of A.D.'s disabilities to engage in unwelcomed and unlawful behaviors.

86. The high school administrator's acts toward A.D. altered the terms and conditions of her educational experience at the Middle School and caused her great emotional harm.

87. Although A.D.'s IEP required a 1:1 aide to be with her at all times, Defendant allowed A.D. to be left alone at the Middle School.

88. Defendant failed to take due care to supervise the high school administrator; failed to take due care to supervise A.D.; failed to protect A.D. from the high school administrator; failed to promulgate and enforce policies and procedures to ensure the high school administrator did not violate the law; failed to exercise reasonable care to investigate the behavior of the high school administrator; failed to create or develop a plan to address the reported behavior of the high school administrator; and otherwise were careless, reckless and/or negligent.

89. The acts and/or omissions of Defendant, its agents, employees and/or servants resulted in A.D. suffering great anxiety, discomfort and mental anguish.

90. The acts and/or omissions of Defendant, its agents, employees and/or servants also damaged Adam and Maria, causing them severe emotional distress, loss of earnings; and other consequential damages to be determined at trial.

91. By reason of the foregoing, Defendant is liable to Plaintiffs for compensatory damages in an amount to be determined at trial, plus punitive damages.

## AS AND FOR A SIXTH CLAIM
### (Intentional Infliction of Emotional Distress)

92. Plaintiffs repeat and reallege each and every allegation made in the above paragraphs of this complaint as if set forth herein more fully at length.

93. The high school administrator's conduct described by A.D. constituted sexually inappropriate behavior with A.D..

94. Defendant knew or should have known of the high school administrator's behavior as, according to A.D., Defendant knew the high school administrator entered the girls' bathroom.

95. Defendant knew or should have known of the high school administrator's propensity to engage in inappropriate interactions with female students, but did not remove the high school administrator from his post.

96. After Adam and Maria learned of the high school administrator's conduct, Defendant engaged in a sham investigation and pulled A.D.'s placement at the Middle School and left her on home instruction and without a placement.

97. As a result of Defendant's conduct, Plaintiffs suffered from extreme emotional distress, humiliation and embarrassment, for which Plaintiffs are entitled to an award of damages, including punitive damages and attorneys' fees.

**WHEREFORE**, Plaintiffs respectfully request a judgment against Defendants:

A. Awarding Plaintiffs compensatory damages for mental, emotional and physical injury, distress, pain and suffering, humiliation, embarrassment, and injury to A.D.'s reputation in an amount to be determined at trial;

B. Compelling Defendant to return A.D. to an appropriate educational setting;

C. Awarding Plaintiffs punitive damages;

D. Awarding Plaintiffs attorneys' fees, costs, and expenses; and

E. Awarding Plaintiffs such other and further relief as the Court may deem equitable, just and proper to remedy Defendant's unlawful practices.

Dated: Garden City, New York
April 20 , 2023

Stagg Wabnik Law Group LLP


By:  /s/Debra L. Wabnik
     Debra L. Wabnik (dw-0944)
*Attorneys for Plaintiffs Adam and Maria Daderian,*
*individually, and as parents and natural guardians*
*of infant A.D.*
401 Franklin Avenue, Suite 300
Garden City, New York 11530
Tel.: (516) 812-4550
Fax: (516) 812-4604